**THE PARK LAW GROUP, LLC**
Attorneys for Plaintiff The Dong-A Ilbo
Chull S. Park, Esq. (No. 202681)
Hyun Suk Choi, Esq. (No. 203535)
23 S. Warren Street
2nd Floor
Trenton, New Jersey 08608

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **THE DONG-A ILBO**, Dong-A Media Center 139 Sejong Ro, Jongno Gu, Seoul, 110-715, South Korea | Civil Action No. 08-2399 (GP) |
| Plaintiff, | **ECF CASE** |
| v. | **ORAL ARGUMENT REQUESTED** |
| **BO H. LIM a/k/a BO HYUN LIM a/k/a DAVID LIM a/k/a LIM BO a/k/a BO LIM a/k/a BO HI LIM a/k/a BO HYEON LIM,** 611 River Road Yardley, Pennsylvania 19067-1906, | |
| AND | |
| **KOOK JIN LEE a/k/a KUK JIN LEE a/k/a KOOK J. LEE a/k/a KOOKJIN LEE a/k/a KOO J. LEE a/k/a KOK J. LEE a/k/a KOOK LEE a/k/a KOOK JUN LEE a/k/a PETER LEE,** 5330 Twillingate Place Duluth, Georgia 30097-6436, | |
| AND | |
| **THE KOREAN DAILY TRIBUNE, INC. a/k/a KOREAN DAILY TRIBUNE, INC. a/k/a DONG-A DAILY NEWS, PHILADELPHIA, INC. a/k/a DONG-A DAILY NEWS d/b/a THE CHOSUN DAILY PHILADELPHIA d/b/a THE DONG-A DAILY NEWS d/b/a DONG-A** | |

**DAILY NEWS, INC.,**
1330 Willow Avenue
Elkins Park, Pennsylvania 19027,

AND

**THE KOREAN SOUTHEAST NEWS,
INC. a/k/a KOREA SOUTHEAST NEWS
a/k/a THE SOUTHEAST NEWS, INC.
d/b/a DONGA DAILY NEWS, LLC d/b/a
THE CHOSUN DAILY NEWS-
ATLANTA, jointly and severally,**
2730 N. Berkeley Lake Road, #800
Duluth, Georgia 30096,
with a branch office located at
1330 Willow Avenue
Elkins Park, Pennsylvania 19027

Defendants.

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS KOOK JIN LEE a/k/a KUK JIN LEE a/k/a KOOK J. LEE a/k/a KOOKJIN LEE a/k/a KOO J. LEE a/k/a KOK J. LEE a/k/a KOOK LEE a/k/a KOOK JUN LEE a/k/a PETER LEE AND THE KOREAN SOUTHEAST NEWS, INC. a/k/a KOREA SOUTHEAST NEWS a/k/a THE SOUTHEAST NEWS, INC. d/b/a DONGA DAILY NEWS, LLC d/b/a THE CHOSUN DAILY NEWS-ATLANTA FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, IMPROPER JOINDER OF PARTIES, AND IMPROPER JOINDER OF CLAIMS

---

On the Brief:  Hyun Suk Choi, Esq.
               Chull S. Park, Esq.

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... 3

TABLE OF AUTHORITIES ............................................................................................... 4

PRELIMINARY STATEMENT ......................................................................................... 5

BRIEF STATEMENT OF RELEVANT FACTS ............................................................... 6

ARGUMENT ..................................................................................................................... 11

I.    THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN BECAUSE SUFFICIENT MINIMUM CONTACTS EXIST BETWEEN PENNSYLVANIA AND THESE DEFEFENDANTS THAT THE EXERCISE OF JURISDICTION DOES NOT OFFEND TRADITIONAL NOTIONS OF SUBSTANTIAL JUSTICE AND FAIR PLAY. .............................................. 11

II.   DEFENDANT K. LEE'S ACTIONS SUBJECT HIM TO THE PERSONAL JURISDICTION OF THIS COURT BECAUSE OF HIS SIGNIFICANT ROLE IN DEFENDANT KSN, THE QUALITY OF HIS INTERACTION WITH HIS CONTACTS IN PENNSYLVANIA AND HIS EXTENSIVE AND SOLE ROLE IN THE TORTIOUS CONDUCT COMMITTED BY DEFENDANT KSN. ............................................................ 20

III.  THIS COURT IS THE PROPER VENUE SINCE PERSONAL JURISDICTION CAN BE EXERCISED OVER DEFENDANT K. LEE AND DEFENDANT KSN. ......................... 23

IV.   SINCE THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN, THE JOINDER OF DEFENDANT K. LEE AND DEFENDANT KSN AS PARTIES TO THIS ACTION IS PROPER.................... 23

V.    SINCE THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN, PLAINTIFF IS ENTITLED TO BRING ALL CLAIMS THAT IT MAY HAVE AGAINST THESE DEFENDANTS IN THIS ACTION.................................................................................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

Asahi Metal Industry Co. v. Superior Court of Cal., 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ................17

Bragg v. Linden Research, Inc., 487 F. Supp.2d 593 (E.D. Pa. 2007)..............12, 16, 17

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) .......17

Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669 (E.D. Pa. 1997) ................13

Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp.2d 578 (E.D. Pa. 2005)................18, 19

Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ................12, 14

Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) .................12, 17

Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217 (3d Cir. 1992) ................12

Mitchell Daroff Enters., Inc. v. Danik, Inc., 209 U.S.P.Q. 531 (E.D. Pa. 1979) ...........18

Moran v. Metropolitan Dist. Council, 640 F. Supp. 430 (E.D. Pa. 1986)................21

Patterson v. FBI, 893 F.2d 595 (3d Cir. 1990)................13

Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197 (3d Cir. 1998) ................16, 17

Provident Nat'l Bank v. California Fed. Savings and Loan Ass'n, 819 F.2d 434 (3d Cir. 1987)13, 14

Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir. 1984)................13

TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784 (E.D. Pa. 1996)................13, 21, 22

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003)................18

Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.,75 F.3d 147 (3d Cir. 1996) .....12

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) ................17

## Statutes

28 U.S.C. § 1367(a)................24
28 U.S.C. § 1391(b)................23
28 U.S.C. § 1391(c)................23
42 Pa.C.S.A. § 5322(a)(4)................18
42 Pa.C.S.A. § 5322(b)................12

## Rules

Fed. R. Civ. P. 18(a)................24
Fed. R. Civ. P. 19(a)................23, 24
Fed. R. Civ. P. 20(a)(2)................24

## PRELIMINARY STATEMENT

Pursuant to L.C.R. 7.1, the plaintiff, The Dong-A Ilbo ("Plaintiff"), submits this memorandum of law in support of its opposition to the motion to dismiss of the defendants, Kook Jin Lee a/k/a Kuk Jin Lee a/k/a Kook J. Lee a/k/a Kookjin Lee a/k/a Koo J. Lee a/k/a Kok J. Lee a/k/a Kook Lee a/k/a Kook Jun Lee a/k/a Peter Lee ("Defendant K. Lee") and The Korean Southeast News, Inc. a/k/a Korea Southeast News a/k/a The Southeast News, Inc. d/b/a Donga Daily News, LLC d/b/a The Chosun Daily News-Atlanta ("Defendant KSN"), for lack of personal jurisdiction, improper venue, improper joinder of parties, and improper joinder of claims.   On May 22, 2008, Plaintiff filed a Verified Complaint against Defendant K. Lee, Defendant KSN and other defendants in the Eastern District of Pennsylvania, Docket No. 08-CV-02399 (GP) for trademark infringement, copyright infringement, violation of common law unfair competition, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, breach of contract, unjust enrichment, fraud, conversion, civil conspiracy, gross negligence and negligence.   On June 23, 2008, Defendant K. Lee and Defendant KSN filed this motion to dismiss the Verified Complaint.

The motion to dismiss Plaintiff's Verified Complaint of Defendant K. Lee and Defendant KSN should be denied because sufficient minimum contacts exist between these defendants and the Commonwealth of Pennsylvania ("Pennsylvania") that support the exercise of personal jurisdiction over these defendants without offending traditional notions of fair play and substantial justice.   Further, since personal jurisdiction can properly be exercised over these defendants, this Court is the proper venue for this action and the joinder of claims and parties are proper.

## BRIEF STATEMENT OF RELEVANT FACTS

Defendant KSN is a company with its principal place of business located in the State of Georgia and with a branch office in Pennsylvania. See Verified Complaint, ¶ 12, which is attached as Ex. A of Decl. of Chull S. Park.("Park Decl."); see also, Decl. of Susan Peterson ("Peterson Decl."), ¶ 6. Defendant K. Lee is the president of Defendant KSN. See Decl. of Hak Joon Kim ("Kim Decl.), ¶ 10. Defendant K. Lee represents that Defendant KSN maintains an office in Pennsylvania. See Peterson Decl, ¶ 6. Ms. Yoon, an employee or representative of Defendant KSN, represented that copies of Defendant KSN's publications are available in the Philadelphia, Pennsylvania area. Id., ¶ 7.

Defendant KSN conducts business throughout the United States including Pennsylvania by selling and distributing its goods and soliciting business in Pennsylvania. See Ex. A of Park Decl., ¶ 15; see also Peterson Decl., ¶¶ 6 - 7. Defendant KSN acknowledged in its own publication that Defendant KSN has distributed its publication, entitled "Korean Business Directory by Dong-A Daily," ("KSN Directory") throughout the United States, including to residents of Pennsylvania. See Ex. B of Park Decl. According to KSN Directory, about 1,500 copies of KSN Directory were distributed in the Philadelphia, Pennsylvania area in year 2007. Id. KSN Directory contains Plaintiff's trade name, moniker, and logo ("Plaintiff's Trademarks"), thereby causing confusion and causing to deceive the residents of Pennsylvania as to the association of Defendant KSN with Plaintiff. Id. Defendant KSN was never authorized to use Plaintiff's Trademarks in KSN Directory. Ex. A of Park Decl., ¶¶ 90 – 97. KSN Directory states that one of the benefits the users of KSN's advertising service through KSN Directory would receive is that "businesses in Atlanta are introduced to potential customers in nationwide U.S." See Exhibit B of Park Decl.

According to Defendant KSN's newspaper advertisement, dated May 4, 2007 ("KSN Advertisement"), Defendant KSN distributed about 90,000 copies of its publication in various locations including the Philadelphia, Pennsylvania area. See Ex. C of Park Decl. KSN Advertisement also contained Plaintiff's Trademarks, thereby causing confusion and causing to deceive residents of Pennsylvania as to the association of Defendant KSN with Plaintiff. Id. Defendant KSN was never authorized to use Plaintiff's Trademarks in KSN Advertisement. Ex. A of Park Decl., ¶¶ 90 - 97. KSN Advertisement states that copies of KSN's publications are available in the Philadelphia, Pennsylvania location of defendant The Korean Daily Tribune, Inc. ("Defendant KDT"). See Ex. C of Park Decl.

Without Plaintiff's knowledge, permission, or authorization, Defendant KSN and Defendant K. Lee used Plaintiff's Trademarks when they registered its domain name, www.atlanta**donga**.com ("KSN's Domain Name"). See Ex. A of Park Decl., ¶ 94. (Emphasis added). Before Defendant KSN registered KSN's Domain Name, Plaintiff owned and used its domain name, www.**donga**.com ("Plaintiff's Domain Name"). Id., ¶ 37. (Emphasis added). KSN's Domain Name is currently linked and redirected to KSN's new domain name, www.atlantakorean.com and www.atlanta**chosun**.com ("KSN's Website"). See Ex. D of Park Decl. (Emphasis added). KSN's Website contains articles and publications of the trade names of Plaintiff's competitor, specifically, The **Chosun** Ilbo. Id. (Emphasis added). KSN's Website contains an on-line subscription section for its publications ("KSN Subscription Application"). Id. Through KSN Subscription Application, KSN is providing an interactive on-line subscription form to its prospective customers who are residing throughout the United States. Id. Defendant KSN is also advertising and selling its publications in the United States through an on-line retailer, Amazon.com. See Ex. E of Park Decl.

In or about September of 2004, the defendant Bo H. Lim ("Defendant B. Lim"), the owner of Defendant KDT, introduced Defendant K. Lee and Defendant KSN to Plaintiff. <u>See</u> Ex. A of Park Decl., ¶ 44. Subsequently, Defendant K. Lee went to Plaintiff's location in South Korea to meet with certain representatives of Plaintiff. <u>Id.</u>, ¶ 45. During the meeting between representatives of Plaintiff and Defendant K. Lee in or about September of 2004, Defendant K. Lee requested permission or authorization to allow both Defendant K. Lee and Defendant KSN to publish and sell Plaintiff's newspaper articles in the Atlanta, Georgia area. <u>Id.</u>, ¶ 46.

In December of 2004, Mr. Hak Joon Kim, the current chairman and former president of Plaintiff, had a trip to the United States to attend an academic conference that was held in Washington D.C. <u>See</u> Kim Decl., ¶ 3. Mr. Kim also traveled to Pennsylvania to meet his family member while he was traveling in the United States during December of 2004. <u>Id.</u>, ¶ 4. While he was staying in Philadelphia, Pennsylvania, Defendant B. Lim requested and invited Mr. Kim to present a seminar to the Korean-American community in Philadelphia, Pennsylvania. <u>Id.</u>, ¶ 4 - 7. Further, Defendant B. Lim invited Mr. Kim to a meeting with Defendant K. Lee on or around December 4, 2004. <u>Id.</u>, ¶ 8.

On or around December 4, 2004, Defendant B. Lim, as the president of Defendant KDT, introduced Defendant K. Lee to Mr. Kim at a meeting requested by Defendant B. Lim. <u>Id.</u>, ¶¶ 8 - 9. During the meeting on or around December 4, 2004, Defendant K. Lee introduced himself as the president of Defendant KSN. <u>Id.</u>, ¶ 10. During the meeting on or around December 4, 2004, Defendant B. Lim suggested to Mr. Kim that Plaintiff enter into an arrangement with Defendant K. Lee that would allow Defendant K. Lee to publish Plaintiff's newspaper articles in the Atlanta, Georgia area. <u>Id.</u>, ¶ 11. During the meeting on or around December 4, 2004, Defendant K. Lee specifically stated to Mr. Kim his desire to publish Plaintiff's articles in the Atlanta,

Georgia area by himself. <u>Id.</u>, ¶ 12. During the meeting on or around December 4, 2004, Defendant K. Lee also specifically stated to Mr. Kim that both Defendant K. Lee and Defendant KSN would like to enter into an agreement where Plaintiff would authorize both Defendant K. Lee and Defendant KSN to publish Plaintiff's newspaper articles in the Atlanta, Georgia area. <u>Id.</u>, ¶ 13.

In his letter to Mr. Yong Park, staff reporter of Plaintiff, which was forwarded to Mr. Park on or around March 19, 2005 ("Defendant K. Lee's Letter"), Defendant K. Lee acknowledged that he met Mr. Kim twice in Philadelphia, Pennsylvania to discuss a possible agreement among Plaintiff, Defendant K. Lee, and Defendant KSN where Plaintiff would authorize both Defendant K. Lee and Defendant KSN to publish Plaintiff's newspaper articles in the Atlanta, Georgia area. <u>See</u> Decl. of Yong Park ("YP Decl."), ¶ 8. In Defendant K. Lee's Letter, Defendant K. Lee acknowledged that both Defendant K. Lee and Defendant KSN had previously published Plaintiff's articles without Plaintiff's authorization. <u>Id.</u>, ¶ 8 - 9. In Defendant K. Lee's Letter, Defendant K. Lee acknowledged that both Defendant K. Lee and Defendant KSN were able to download Plaintiff's newspaper articles through the File Transfer Protocol ("FTP") by using a password ("Password"), which Defendant B. Lim and Defendant KDT had previously provided to them. <u>Id.</u>, ¶¶ 8, 10. Plaintiff never authorized Defendant B. Lim or Defendant KDT to provide the Password to Defendant K. Lee or Defendant KSN. <u>Id.</u>, ¶ 11.

Prior to December of 2004, on numerous occasions, Defendant B. Lim attempted to persuade Plaintiff to allow him and Defendant KDT to publish Plaintiff's newspaper articles in the Atlanta, Georgia area. <u>Id.</u>, ¶ 2. In late December of 2004, Plaintiff proposed a possible agreement to both Defendant K. Lee and Defendant KSN where Defendant K. Lee and

Defendant KSN would be allowed to publish and sell Plaintiff's newspaper articles in the Atlanta, Georgia area ("Plaintiff's Proposed Agreement"). See Ex. A of Park Decl., ¶ 47. Plaintiff forwarded Plaintiff's Proposed Agreement to Defendant K. Lee and Defendant KSN only for the review of Defendant K. Lee and Defendant KSN. See YP Decl., ¶ 3. On or about February 18, 2005, Defendant B. Lim forwarded to Plaintiff a proposed agreement among Plaintiff, Defendant B. Lim and Defendant KDT ("Defendant B. Lim's Proposed Agreement"). See Ex. A of Park Decl., ¶¶ 57 – 58; see also, YP Decl., ¶ 4. Defendant B. Lim's Proposed Agreement was identical to Plaintiff's Proposed Agreement, except for a minor change to the name of the parties and the deletion of the security deposit requirement. Compare Ex. F of Park Decl. (Plaintiff's Proposed Agreement) with Ex. G of Park Decl. (Defendant B. Lim's Proposed Agreement); see also, YP Decl., ¶ 5. Plaintiff never sent Plaintiff's Proposed Agreement to Defendant B. Lim or Defendant KDT directly. See YP Decl., ¶ 6. In his letter to Plaintiff, dated February 18, 2005, Defendant B. Lim acknowledged that he and Defendant KDT used Plaintiff's Proposed Agreement in drafting Defendant B. Lim's Proposed Agreement. See Ex. G of Park Decl. Interestingly, Defendant KDT represented to the public that it has a branch office in the Atlanta, Georgia area with the same telephone number as Defendant K. Lee. See Peterson Decl., ¶¶ 4 - 5.

In February of 2007, after Plaintiff terminated certain agreements with Defendant B. Lim, Defendant KDT, Defendant K. Lee and KSN (collectively, "All Defendants"), All Defendants made numerous misrepresentations to Plaintiff that All Defendants wanted to enter into new agreements with Plaintiff; however, All Defendants were negotiating agreements with Plaintiff's competitor, The Chosun Ilbo, located in South Korea. See Ex. A of Park Decl., ¶ 113. In 2007, All Defendants entered into an agreement with The Chosun Ilbo where The Chosun Ilbo

authorized All Defendants to publish The Chosun Ilbo's newspaper articles in the United States. Id., ¶ 114.

In or about mid-November of 2007, All Defendants simultaneously started publishing and selling The Chosun Ilbo's newspaper articles in the United States. Id., ¶ 115.

**ARGUMENT**

I.      **THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN BECAUSE SUFFICIENT MINIMUM CONTACTS EXIST BETWEEN PENNSYLVANIA AND THESE DEFEFENDANTS THAT THE EXERCISE OF JURISDICTION DOES NOT OFFEND TRADITIONAL NOTIONS OF SUBSTANTIAL JUSTICE AND FAIR PLAY.**

This Court has personal jurisdiction over Defendant K. Lee and Defendant KSN because the contacts these defendants have with Pennsylvania is more than sufficient to satisfy the standards of general jurisdiction and specific jurisdiction. Defendant K. Lee and Defendant KSN not only purposefully availed themselves of the benefits and protections of Pennsylvania by marketing and distributing their products in Pennsylvania as well as negotiating agreements within Pennsylvania, the defendants also maintain a branch office in Pennsylvania, as admitted by Defendant K. Lee. Further, the Court may reasonably exercise jurisdiction over Defendant K. Lee and Defendant KSN without offending notions of fair play and substantial justice since these defendants along with the other defendants, who are Pennsylvania residents, sought to commit tortious acts that caused harm to the residents of Pennsylvania as well as Plaintiff. Indeed, Pennsylvania served as the central location for all of the arrangements made among the defendants to either intentionally deprive Plaintiff of its property or at the very least, use tactics to delay Plaintiff's action against them. Indeed, most of the evidence and facts concerning the tortious activities of Defendant K. Lee and Defendant KSN can be discovered in Pennsylvania.

Generally, a federal district court may exercise jurisdiction to the same extent as the state in which it sits over a nonresident defendant pursuant to the state's so-called "long-arm statute." Bragg v. Linden Research, Inc., 487 F. Supp.2d 593, 598 (E.D. Pa. 2007). Because the reach of Pennsylvania's long-arm statute "is coextensive with the limits placed on the states by the federal Constitution," the Court looks to federal constitutional doctrine to determine whether personal jurisdiction exists over the defendants. Id. (citing Vetrotex Certainteed Corp. v. Consol. Fiber Glass Products Co.,75 F.3d 147, 150 (3d Cir. 1996); 42 Pa.C.S.A. § 5322(b)).

Accordingly, personal jurisdiction can be established in two different ways: specific jurisdiction and general jurisdiction. Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). General jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16, 104 S. Ct. 1868, 1872-73, 80 L. Ed. 2d 404 (1984) (the court found personal jurisdiction over a defendant that had solicited helicopter services in Texas, negotiated its contract for services there, had purchased about 80% of its helicopters, spare parts, and accessories for more than $4 million from a Texas company over an eight year period, and regularly sent employees to Texas for training and to bring back helicopters). In the absence of general jurisdiction, specific jurisdiction permits a court to exercise personal jurisdiction over a non-resident defendant for forum-related activities where the "relationship between the defendant and the forum falls within the 'minimum contacts' framework" of Int'l Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) and subsequent decisions. Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992).

A plaintiff can demonstrate that the defendant has minimum contacts with the forum by providing sufficient jurisdictional facts by affidavit, depositions or other competent evidence to establish the court's jurisdiction over the defendant. Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n. 9 (3d Cir. 1984) (citation omitted)). Indeed, **"factual discrepancies created by affidavits are generally resolved in favor of the non-moving party."** Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 674 n. 3 (E.D. Pa. 1997) (Emphasis added); see also TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784, 787 (E.D. Pa. 1996).

### A.    General jurisdiction

In analyzing whether a defendant is subject to general jurisdiction, "the Court should consider whether defendant's activities in the forum are extensive and pervasive and are a continuous and central part of defendant's business." Provident Nat'l Bank v. California Fed. Savings and Loan Ass'n, 819 F.2d 434, 438 (3d Cir. 1987). "Factors the Court should consider in this analysis include: the nature and quality of business contacts the defendant has initiated with the forum; direct sales in the forum, maintenance of a sales force in the state, [and] advertising targeted at the residents of the forum state." Id.

In Provident Nat'l Bank, the court found general jurisdiction over a nonresident defendant even though the defendant "maintained no Pennsylvania office, employees, agents, mailing address, or telephone number." Id. at 436. In Provident, a Pennsylvania national bank brought an action against a California savings and loan association to recover amounts owed on a certificate of deposit. Id. at 436-437. While the court did note that the "deposits and loans ... were not made in Pennsylvania, but were made in California and elsewhere for Pennsylvania resident customers[,]" the court found the fact that the California defendant maintained a

"controlled disbursement account" with another Pennsylvania bank under a "zero balance arrangement" indicated that the California bank carried on a continuous and systematic part of its general business with in Pennsylvania.  Id. at 438.  The court affirmed the lower court's observation that the "nature of [the California defendant's] contacts with Pennsylvania respecting deposits and loans was central to the conduct of its business." Id. at 438.  In applying the analysis of Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984), the court reasoned that "due to the nature of its contacts, [the California defendant] would have a greater expectation of being haled into court in Pennsylvania than the Helicopteros defendant had of being haled into court in Texas." Id.

Here, Defendant K. Lee and Defendant KSN admit to using a physical location in Pennsylvania that is also used by Defendant B. Lim and Defendant KDT. See Peterson Decl., ¶¶ 5 - 7; see also Ex. C of Park Decl. Also, Defendant K. Lee and Defendant KSN admit to distributing its publications in Pennsylvania and making such publications available at the location of Defendant B. Lim and Defendant KDT, a Pennsylvania office of Defendant K. Lee and Defendant KSN. See Peterson Decl., ¶¶ 6 and 7; Exs. B and C of Park Decl. Defendant K. Lee and Defendant KSN touted its distribution throughout the United States and Pennsylvania to the public in KSN Advertisement. See Ex. C of Park Decl. Defendant K. Lee and Defendant KSN gave specific figures of its distribution throughout the United States and Pennsylvania in KSN Directory and KSN Advertisement. See Exs. B and C of Park Decl. Indeed, Defendant K Lee and Defendant KSN make claims in KSN Directory that "businesses in Atlanta are introduced to potential customers in nationwide US[,]" seemingly, because KSN Directory is distributed throughout the United States, including Pennsylvania. See Ex. B of Park Decl. Defendant K. Lee and Defendant KSN are in the business of publishing newspapers, directories

and such information.  See Ex. A of Park Decl.  Like the defendant in Provident, the nature of

the contacts that Defendant K. Lee and Defendant KSN had with Pennsylvania is continuous and

central to its business.  Without the connection that Defendant K. Lee and Defendant KSN have

with Pennsylvania, they would not be able to tout their ability to market businesses of Atlanta,

Georgia to Pennsylvania or the rest of the United States.  Furthermore, the relationship among

All Defendants raises support for the exercise of general jurisdiction over Defendant K. Lee and

Defendant KSN.

Defendant B. Lim acted as an agent for Defendant K. Lee and Defendant KSN when

Defendant B. Lim made arrangements for a meeting, which took place in Pennsylvania, among

Mr. Kim, Defendant K. Lee and Defendant KSN for purposes of soliciting the authorization from

Plaintiff to publish Plaintiff's articles.  See Kim Decl., ¶¶ 8 – 13.  Also, Defendant K. Lee

admitted that he improperly received the Password for FTP access to Plaintiff's property from

Defendant B. Lim and Defendant KSN.  See YP Decl., ¶ 10.  Mr. Soon J. Kwon, manager of

advertising department of Defendant KDT, represented that it has a branch office in Atlanta,

Georgia with a certain telephone number.  See Peterson Decl., ¶¶ 4 and 5.  When the telephone

number was contacted, Defendant K. Lee answered and confirmed that Defendant KSN "ha[s]

other US locations including one in Pennsylvania."  Id., ¶ 6.

Indeed, when confronted with the issue concerning Defendant KSN's improper use of

Plaintiff's intellectual property, Defendant K. Lee and Defendant KSN admitted that they had

"previous published Plaintiff's newspaper articles in the Atlanta, Georgia area without Plaintiff's

authorization. See YP Decl., ¶¶ 8 and 9.  Defendant K. Lee further admitted that Defendant K.

Lee and Defendant KSN "were able to download Plaintiff's newspaper articles" through the use

of the Password that "Defendant B. Lim and Defendant KDT had previously provided to

Defendant K. Lee and Defendant KSN. Id., ¶¶ 8, 10. Plaintiff neither authorized Defendant B. Lim or Defendant KDT to provide the Password to Defendant K. Lee or Defendant KSN nor directly provided such Password to Defendant K. Lee and Defendant KSN. Id., ¶¶ 11 and 12.

Finally, the collusive nature of the relationship among All Defendants is best exemplified by the facts surrounding the proposed agreements that were attempted to be negotiated and executed by Plaintiff. See YP Decl., ¶¶ 3 – 6. Plaintiff forwarded Plaintiff's Proposed Agreement to Defendant K. Lee and Defendant KSN only for the review of Defendant K. Lee and Defendant KSN. Id., ¶ 3. However, within a short period of time, Plaintiff received from Defendant B. Lim Defendant B. Lim's Proposed Agreement without any prior request from Plaintiff. Id., ¶ 4. As Defendant B. Lim admitted, Defendant B. Lim's Proposed Agreement is based upon, almost entirely, Plaintiff's Proposed Agreement. Id., ¶ 5. During the course of attempting to negotiate new agreements with All Defendants, All Defendants contemporaneously and suddenly produced articles and used trademarks belonging to a competitor of Plaintiff in both the Philadelphia, Pennsylvania area and the Atlanta, Georgia area. See Ex. A of Park Decl. These facts support the close connection All Defendants share with respect to the claims of Plaintiff. Indeed, not only may this court exercise general jurisdiction over these defendants, but the exercise of specific jurisdiction is proper under the current factual circumstances.

### B.    Specific jurisdiction

In deciding whether specific personal jurisdiction is appropriate, a court must first determine whether the defendant has the minimum contacts with the forum necessary to have reasonably anticipated being haled into court there. Bragg, supra, 487 F. Supp.2d at 598. (citing Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir. 1998); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (it

is reasonable to subject a party to personal jurisdiction in a forum state where sales arise from the efforts of the manufacturer or distributor to directly or indirectly serve the market). Next, once minimum contacts have been established, a court may inquire whether the assertion of personal jurisdiction would comport with traditional conceptions of fair play and substantial justice. Id. (citing Pennzoil, supra, 149 F.3d at 201; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The first step is mandatory, but the second step is discretionary. Id. When determining the reasonableness of a particular forum, the court must consider the burden on the defendant in light of other factors including: "the forum state's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, at least when that interest is not adequately protected by the plaintiff's right to choose the forum; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies." World-Wide Volkswagen, supra, 444 U.S. at 292, 100 S. Ct. at 564 (internal citations omitted). Even a single act can support specific jurisdiction, so long as it creates a "substantial connection" with the forum. Burger King, supra, 471 U.S. at 476, 105 S. Ct. 2174; Asahi Metal Industry Co. v. Superior Court of Cal., 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) ("marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" is "additional conduct of the defendant" that may "indicate an intent or purpose to serve the market in the forum State"). Indeed, the distribution of an advertisement in Pennsylvania is sufficient for minimum contacts even though the advertisement was in the Washington Post. Mitchell Daroff Enters., Inc. v. Danik, Inc., 209 U.S.P.Q. 531, 532 (E.D. Pa. 1979). Accordingly, the Pennsylvania long-arm statute extends jurisdiction to any person who

"causes harm or tortious injury in the Commonwealth by an act or omission outside the Commonwealth." Endless Pools, Inc. v. Wave Tec Pools, Inc., 362 F. Supp.2d 578, 582 (E.D. Pa. 2005) (citing 42 Pa.C.S.A. § 5322(a)(4)).

In Endless Pools, the court concluded that personal jurisdiction over a non-resident defendant can be maintained because the plaintiff suffered injury in Pennsylvania although the nonresident's conduct occurred outside Pennsylvania. Id. In Endless Pools, a manufacturer of swimming pools filed an action against a competitor for infringement of the "Endless Pools" mark alleging trademark infringement, use of false designations of origin and false representations in commerce, cyberpiracy, and common law trademark infringement, and unfair competition. Id. at 581. The nonresident defendant had one of two nationwide sales representatives based in Pennsylvania. Id. at 583. That sales representative was assigned to solicit business in Pennsylvania, and ultimately created at least one sale to a Pennsylvania resident. Id. Further, the court noted that the nonresident "us[ed] a name that might be found to be confusingly similar to that of plaintiff's and hir[ed] one of plaintiff's former employees[.]" Id. With respect to the analysis of the website, the court noted that "there must be evidence of some contacts in addition to the fact that the [nonresident defendant's] website is accessible in the forum state." Id. at 584 (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 453 (3d Cir. 2003) (citation omitted)). The court stated, "In determining whether the exercise of jurisdiction in this case is appropriate, the Court may consider [the nonresident defendant's] related non-Internet activities." Id. The court concluded that "by employing a Pennsylvania-based sales representative and contacting Pennsylvania residents, [the nonresident defendant] deliberately solicited and transacted business in Pennsylvania[, thus, satisfying] the 'something more' necessary to establish personal jurisdiction.'" Id. at 585.

Here, in addition to Defendant K. Lee's representation that both Defendant K. Lee and Defendant KSN maintain an office in Pennsylvania, Defendant K. Lee and KSN actively sought to use Pennsylvania as the location for the birth of their tortious activities. Defendant KSN stated that KSN Directory was available at the location of Defendant KDT. See Ex. C. of Park Decl. Ms. Yoon, an employee of Defendant KSN, stated that Defendant KSN has "other publications which are available at newsstands in the Philadelphia, Pennsylvania area." See Peterson Decl., ¶¶ 6 and 7. Defendant K. Lee and Defendant KSN touted the reach of the readership of its publications in order to claim that businesses from Atlanta, Georgia would be exposed to the rest of the United States as well as Pennsylvania. See Ex. B of Park Decl. Defendant KSN maintains a website that allows prospective customers to order subscription requests through the website. See Ex. D of Park Decl. KSN's Domain Name combines Plaintiff's Domain Name with a simple geographic term to redirect viewers to other sites owned and operated by Defendant K. Lee and Defendant KSN. See Exs. A and D of Park Decl. Defendant K. Lee and Defendant KSN also market their products through other websites, such as Amazon.com. See Ex. E of Park Decl. Plaintiff never authorized or permitted Defendant K. Lee and Defendant KSN to use Plaintiff's intellectual property in the publications of Defendant K. Lee and Defendant KSN, which were distributed in Pennsylvania. See Ex A. of Park Decl. However, Defendant K. Lee and Defendant KSN committed tortious activities in Pennsylvania by distributing KSN Directory within Pennsylvania, which improperly contained Plaintiff's Trademarks. See Exs. B and C of Park Decl. Therefore, as in Endless Pools, Plaintiff's claims arose as a result of the tortious acts of Defendant K. Lee and Defendant KSN directed to Pennsylvania and committed in Pennsylvania.

Next, the court's exercise of personal jurisdiction over Defendant K. Lee and KSN will

not offend "traditional notions of fair play and substantial justice." All of Plaintiff's claims focus on the improper, unauthorized use of Plaintiff's intellectual property planned by Defendant B. Lim and Defendant K. Lee with roots in Pennsylvania. See Ex. A of Park Decl. Pennsylvania was a convenient forum for the activities of Defendant K. Lee and Defendant KSN because of their relationship with Defendant B. Lim and Defendant KDT, both Pennsylvania residents. Defendant K. Lee met Mr. Kim, the current chairman of Plaintiff, at the arrangement of Defendant B. Lim in Pennsylvania to solicit the possibility of an agreement where Defendant K. Lee would be permitted to use Plaintiff's intellectual property. See Kim Decl., ¶¶ 7 – 13. Defendant K. Lee admitted to meeting Mr. Kim twice in Philadelphia, Pennsylvania to negotiate agreements with Plaintiff to publish Plaintiff's articles in the Atlanta, Georgia area. See YP Decl., ¶8. "Pennsylvania has a strong interest in providing a forum for the resolution of disputes of its residents and protecting its residents from the type of conduct [that Plaintiff] alleges caused harm in Pennsylvania." Endless Pools, supra, 362 F. Supp.2d at 585. Indeed, if this court does not exercise personal jurisdiction over Defendant K. Lee and Defendant KSN, Plaintiff will suffer from their efforts to thwart an effective resolution to this matter by forcing Plaintiff to file a separate suit in the State of Georgia when all facts and evidence concerning the concerted effort of Defendant K. Lee, Defendant KSN, Defendant B. Lim and Defendant KDT are available in Pennsylvania. Therefore, this Court must exercise specific personal jurisdiction over Defendant K. Lee and Defendant KSN.

## II. DEFENDANT K. LEE'S ACTIONS SUBJECT HIM TO THE PERSONAL JURISDICTION OF THIS COURT BECAUSE OF HIS SIGNIFICANT ROLE IN DEFENDANT KSN, THE QUALITY OF HIS INTERACTION WITH HIS CONTACTS IN PENNSYLVANIA AND HIS EXTENSIVE AND SOLE ROLE IN THE TORTIOUS CONDUCT COMMITTED BY DEFENDANT KSN.

Defendant K. Lee was the sole actor behind Defendant KSN's activities in Pennsylvania

and against Plaintiff. No other individual was involved from Defendant KSN. Defendant K. Lee's own actions support the conclusion that personal jurisdiction should be exercised over him for his actions taken as the president of Defendant KSN. Defendant K. Lee, acting as the president of Defendant KSN, subjected himself to the personal jurisdiction of this Court by his significant and extensive role as the representative of Defendant KSN, his exclusive interactions with Pennsylvania and his dominant and exclusive role in the actions committed by Defendant KSN against Plaintiff.

Generally, a person acting as an agent for a corporation is not individually subject to personal jurisdiction merely based on his actions in corporate capacity. TJS Brokerage & Co. v. Mahoney, 940 F. Supp. 784, 789 (E.D. Pa. 1996) (citing Moran v. Metropolitan Dist. Council, 640 F. Supp. 430, 433 (E.D. Pa. 1986) (case by case approach favored when considering whether all defendant's contacts with forum should be taken into account). However, the courts have held that in order to hold such a defendant subject to personal jurisdiction, it must be shown that the defendant had a major role in the corporate structure, the quality of his contacts with the state were significant, and his participation in the tortious conduct alleged was extensive. Id. If those factors are present, the defendant's contacts with the forum in his corporate capacity may be considered in deciding if he should be subject to jurisdiction in an individual capacity. Id.

In TJS, the court found that a nonresident defendant had "enough contact with Pennsylvania to be held subject to the court's jurisdiction." Id. at 788. In TJS, a Pennsylvania-based freight forwarder brought suit against a corporate agent, its New York-based sole shareholder and president and other defendants that were not residents of Pennsylvania. Id. at 787. The court found that the New York-based sole shareholder "had extensive contact with Pennsylvania since he visited the [plaintiff's] facilities, received training [in Pennsylvania],

executed the agency agreement [in Pennsylvania], received payments from [the plaintiff's] Pennsylvania office, and made continue phone calls to Pennsylvania. Id. at 789. Further, the court determined that the nonresident defendant, "as sole shareholder and president of the company, had a significant role in the company's corporate structure, and that he had, according to plaintiff's allegations, a significant role in the tortious conduct charged." Id. Thus, the court ruled that the nonresident defendant's contacts with "Pennsylvania in his corporate capacity may be considered when evaluating whether the nonresident defendant is subject to personal jurisdiction in [Pennsylvania]." Id.

Here, Defendant KSN is a mere alter ego of Defendant K. Lee. All acts committed by Defendant KSN were done by Defendant K. Lee as the president of Defendant KSN. See Kim Decl., ¶ 10 – 13; see also Peterson Decl, ¶¶ 5 – 6; YP Decl., ¶¶ 3, 7 - 10. Defendant K. Lee acknowledged that Defendand KSN and he published Plaintiff's articles without Plaintiff's permission or authorization. See YP Decl., ¶ 8 – 9. Defendant K. Lee also admitted that he received the Password from Defendant B. Lim and Defendant KDT to download articles of Plaintiff without Plaintiff's authorization or permission. Id., ¶¶ 8, 10. No other individual was involved from Defendant KSN regarding the tortious activities of Defendant KSN. Defendant K. Lee also executed the relevant agreement in his official and individual capacity. See Exs. F and H of Park Decl. Defendant K. Lee answered the telephone for the branch office of Defendant KDT. See Peterson Decl., ¶6. Defendant K. Lee also represented that the Pennsylvania location of Defendant KDT serves as an office of Defendant KSN. Id. Defendant KSN's publications are available at the location of Defendant KDT. Id., ¶ 6 – 7; see also Exs. B and C of Park Decl. Like the nonresident defendant in TJS, Defendant K. Lee's control and efforts with the transactions at issue are solely his own and do not involve any other individual of Defendant

KSN. Therefore, due to Defendant K. Lee's actions as the president of Defendant KSN, Defendant K. Lee is subject to the personal jurisdiction of this court.

**III.    THIS COURT IS THE PROPER VENUE SINCE PERSONAL JURISDICTION CAN BE EXERCISED OVER DEFENDANT K. LEE AND DEFENDANT KSN.**

Venue in this matter is governed by 28 U.S.C. § 1391(b), which provides:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendant may be found if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Subsection (c) of 28 U.S.C. §1391(c) further provides that a corporate defendant is "deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c).

Here, since the court may properly exercise personal jurisdiction over Defendant K. Lee and Defendant KSN, the Eastern District of Pennsylvania is a proper venue under 28 U.S.C. § 1391(b). Indeed, given the fact that a substantial part of the events that give rise to Plaintiff's claims against All Defendants occurred in or around the Philadelphia Pennsylvania, the Eastern District of Pennsylvania still remains the proper venue for this action. No other venue could serve as the proper forum for the final and complete resolution of all of Plaintiff's claims.

**IV.    SINCE THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN, THE JOINDER OF DEFENDANT K. LEE AND DEFENDANT KSN AS PARTIES TO THIS ACTION IS PROPER**

Pursuant to Fed. R. Civ. P. 19(a), "a person who is subject to service of process and

whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: in that person's absence, the court cannot accord complete relief among existing parties." Further, pursuant to Fed. R. Civ. P. 20(a)(2), "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action. Therefore, as long as this Court has jurisdiction over Defendant K. Lee and Defendant KSN, Plaintiff is entitled to bring suit against any defendant that has a connection to the "same transaction, occurrence or series of transactions or occurrences" that gave rise to Plaintiff's claims.   Indeed, Defendant K. Lee and Defendant KSN should be considered indispensable parties under Fed. R. Civ. P. 19(a).

## V. SINCE THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANT K. LEE AND DEFENDANT KSN, PLAINTIFF IS ENTITLED TO BRING ALL CLAIMS THAT IT MAY HAVE AGAINST THESE DEFENDANTS IN THIS ACTION.

Pursuant to 28 U.S.C. § 1367(a), the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Further, pursuant to Fed. R. Civ. P. 18(a), a party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party. Here, as long as this Court may exercise jurisdiction over Defendant K. Lee and Defendant KSN, Plaintiff is entitled to bring any claims against them, even if unrelated to the primary cause of action. See Fed. R. Civ. P. 18(a).

## CONCLUSION

For the foregoing reasons, Plaintiff, The Dong-A Ilbo, requests this Court deny Defendant K. Lee and Defendant KSN's motion to dismiss for lack of personal jurisdiction, improper venue, improper joinder of parties, and improper joinder of claims with prejudice

Date:   July 7, 2008

Respectfully submitted,

The Park Law Group, LLC
Attorneys for Defendants

By: _____
Chull S. Park (No. 202681)
Hyun Suk Choi (No. 203535)