**THE PARK LAW GROUP, LLC**
Attorneys for Plaintiff The Dong-A Ilbo
Chull S. Park, Esq. (No. 202681)
Hyun Suk Choi, Esq. (No. 203535)
23 S. Warren Street
2nd Floor
Trenton, New Jersey 08608

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

**THE DONG-A ILBO,**
Dong-A Media Center
139 Sejong Ro, Jongno Gu,
Seoul, 110-715, South Korea

          Plaintiff,

       v.

**BO H. LIM a/k/a BO HYUN LIM a/k/a DAVID LIM a/k/a LIM BO a/k/a BO LIM a/k/a BO HI LIM a/k/a BO HYEON LIM,**
611 River Road
Yardley, Pennsylvania 19067-1906,

          AND

**KOOK JIN LEE a/k/a KUK JIN LEE a/k/a KOOK J. LEE a/k/a KOOKJIN LEE a/k/a KOO J. LEE a/k/a KOK J. LEE a/k/a KOOK LEE a/k/a KOOK JUN LEE a/k/a PETER LEE,**
5330 Twillingate Place
Duluth, Georgia 30097-6436,

          AND

**THE KOREAN DAILY TRIBUNE, INC. a/k/a KOREAN DAILY TRIBUNE, INC. a/k/a DONG-A DAILY NEWS, PHILADELPHIA, INC. a/k/a DONG-A DAILY NEWS d/b/a THE CHOSUN DAILY PHILADELPHIA d/b/a THE DONG-A DAILY NEWS d/b/a DONG-A**

Civil Action No. 08-2399 (GP)

**ECF CASE**

**ORAL ARGUMENT REQUESTED**

**DAILY NEWS, INC.,**
1330 Willow Avenue
Elkins Park, Pennsylvania 19027,

AND

**THE KOREAN SOUTHEAST NEWS, INC. a/k/a KOREA SOUTHEAST NEWS a/k/a THE SOUTHEAST NEWS, INC. d/b/a DONGA DAILY NEWS, LLC d/b/a THE CHOSUN DAILY NEWS-ATLANTA,**
2730 N. Berkeley Lake Road, #800
Duluth, Georgia 30096,
with a branch office located at
1330 Willow Avenue
Elkins Park, Pennsylvania 19027

AND

**STV NETWORKS, INC., jointly and severally,**
1330 Willow Avenue
Elkins Park, Pennsylvania 19027

Defendants.

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS
## BO H. LIM a/k/a BO HYUN LIM a/k/a DAVID LIM a/k/a LIM BO a/k/a BO LIM a/k/a BO HI LIM a/k/a BO HYEON LIM
## AND
## THE KOREAN DAILY TRIBUNE, INC. a/k/a KOREAN DAILY TRIBUNE, INC. a/k/a DONG-A DAILY NEWS, PHILADELPHIA, INC. a/k/a DONG-A DAILY NEWS d/b/a THE CHOSUN DAILY PHILADELPHIA d/b/a THE DONG-A DAILY NEWS d/b/a DONG-A DAILY NEWS, INC.

---

On the Brief:   Chull S. Park, Esq.
              Hyun Suk Choi, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................3

TABLE OF AUTHORITIES..................................................................................................4

PRELIMINARY STATEMENT............................................................................................5

PROCEDURAL HISTORY ...................................................................................................6

BRIEF STATEMENT OF RELEVANT FACTS ..................................................................7

STANDARD OF REVIEW..................................................................................................11

LEGAL ARGUMENT .........................................................................................................11

   I.   THE LEGAL ARGUMENT OF DEFENDANT B. LIM AND DEFENDANT KDT TO
ENFORCE A FORUM SELECTION CLAUSE IS ERRONEOUSLY BASED UPON THE
PROPOSAL, NOT THE CONTRACT, AND FURTHER, DEFENDANT KDT DOES NOT
HAVE STANDING TO ENFORCE THE FORUM SELECTION CLAUSE OF THE
CONTRACT. ........................................................................................................................11

   II.  BECAUSE THE FORUM SELECTION CLAUSE IN THE CONTRACT IS
PERMISSIVE, NOT EXCLUSIVE, THIS COURT IS A PROPER FORUM FOR THIS
ACTION.................................................................................................................................13

   III.   THE ENFORCEMENT OF THE FORUM SELECTION CLAUSE IN THE
CONTRACT WILL BE UNREASONABLE UNDER THE CIRCUMSTANCES OF THIS
CASE ....................................................................................................................................16

CONCLUSION .....................................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

Central Contracting Company v. C.E. Youngdahl & Company, Inc., 209 A.2d 810 (1965) ........... ........................................................................................................................... 13, 16, 20

Churchill Corp. v. Third Century, Inc., 578 A.2d 532 (1990) ....................................................... 13

Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 54 F.R.D. 539 (W.D.Pa. 1972) ............. 18

Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 578 F.2d. 953 (3d Cir. 1978) .......... 17, 18

Deynzer v. Columbia Gas of Pa., Inc., 875 A.2d 298 (Pa.Super. 2005) ...................................... 12

First Nat'l City Bank v. Nanz, Inc., 437 F.Supp. 184 (S.D.N.Y. 1975)........................................ 14

Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d. 723 (W.D. Pa. 2007)............... 11, 12

Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75 (9th Cir. 1987) ................................ 15

Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers v. Koski Constr. Co., 474 F.Supp. 370 (W.D.Pa. 1979) ...................................................................................................... 14

Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG, 440 F. Supp. 2d 357 (D.N.J. 2006)..... ........................................................................................................................................... 13, 15

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)........... ................................................................................................................................. 13, 16, 20, 21

Morgan Trailer Mfg. Co. v. Hydraroll, Ltd., 759 A.2d 926 (Pa. Super. 2000)............................ 18

Nova Ribbon Prods., Inc. v. Lincoln Ribbon, Inc., No. 89 Civ. 4340, 1992 WL 392614 (E.D.Pa. Dec. 14, 2002) ..................................................................................................................... passim

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) .................................................... 11

Pinker v. Roche Holdings Ltd., 292 F.3d 361 (3d Cir. 2002) ...................................................... 11

Polsky v. Hall City Centre Assocs. Ltd. Partnership, No. 88 Civ. 9086, 1989 WL 48109 (E.D.Pa. May 4, 1989) ............................................................................................................................... 15

S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607 (M.D.N.C. 1997) ........................... 13

The Pep Boys-Manny, Moe & Jack v. Amer. Waste Oil Servs. Corp., No. 96 Civ. 7098, 1997 WL 367048 (E.D.Pa. 1997)............................................................................................................ 14, 15

## PRELIMINARY STATEMENT

Pursuant to L.C.R. 7.1, the plaintiff, The Dong-A Ilbo ("Plaintiff"), submits this memorandum of law in support of its opposition to the motion to dismiss of the defendants, Bo H. Lim a/k/a Bo Hyun Lim a/k/a David Lim a/k/a Lim Bo a/k/a Bo Lim a/k/a Bo Hi Lim a/k/a Bo Hyeon Lim ("Defendant B. Lim") and The Korean Daily Tribune, Inc. a/k/a Korean Daily Tribune, Inc. a/k/a Dong-A Daily News, Philadelphia, Inc. a/k/a Dong-A Daily News d/b/a The Chosun Daily Philadelphia d/b/a The Dong-A Daily News d/b/a Dong-A Daily News, Inc. ("Defendant KDT").

This Court should deny the motion to dismiss of Defendant B. Lim and Defendant KDT ("Motion to Dismiss") because the legal argument of Defendant B. Lim and Defendant KDT is erroneously based upon a document that is not the contract at issue in this case. Further, since Defendant KDT is not a party to the actual contract at issue, Defendant KDT cannot seek to enforce any applicable clauses contained in such contract. Additionally, Defendant B. Lim, the party to the actual contract, improperly filed the Motion to Dismiss while in default. Assuming Defendant B. Lim properly filed the Motion to Dismiss, the enforcement of the forum selection clause in the actual contract at issue is unreasonable.

## PROCEDURAL HISTORY

On May 22, 2008, Plaintiff filed a Verified Complaint against Defendant B. Lim, Defendant KDT and other defendants in this Court for trademark infringement, copyright infringement, violation of common law unfair competition, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, breach of contract, unjust enrichment, fraud, conversion, civil conspiracy, gross negligence and negligence ("Verified Complaint"). On July 1, 2008, the Clerk entered Default against Defendant B. Lim for failure to appear, plead, or otherwise defend. On October 14, 2008, Defendant B. Lim and Defendant KDT filed the Motion to Dismiss. On October 22, 2008, Plaintiff filed a First Amended Verified Complaint ("Amended Complaint") to include STV Networks, Inc. ("STV") as an additional defendant and as the successor-in-interest to Defendant KDT.

Currently, Defendant B. Lim is still in default and has not filed an application to vacate the default. While Plaintiff did agree to a Stipulation with Defendant B. Lim and Defendant KDT to allow thirty (30) days from September 15, 2008 to respond to the Verified Complaint, Defendant B. Lim failed to file an application to vacate the default before bringing the Motion to Dismiss. As this Court explained, "As long as the default remains in effect, the pleadings are closed and defendants are not entitled to put in issue their version of the facts alleged by plaintiff, which is the substantive result of entry of an answer to the complaint on the record of this case." Sierra Foods, Inc. v. Haddon House Food Prods., Inc., No. 90 Civ. 6841, 1992 WL 245847, at *4 (E.D.Pa. 1992). Indeed, Defendant B. Lim lacks "standing to present a substantive defense to the complaint until and unless the default is lifted." Id. at *5. Notwithstanding this procedural defect, Plaintiff submits its opposition assuming that Defendant B. Lim properly filed the Motion to Dismiss.

## BRIEF STATEMENT OF RELEVANT FACTS

### A.    *Background Information.*

Plaintiff provides information and news to the public in South Korea, the U.S. and other foreign countries, through the use of various media, which Plaintiff owns and creates ("Plaintiff's Copyrighted Works"). See V. Compl., ¶ 26. 34 -35.  Plaintiff, as the sole and exclusive owner, has published, distributed and sold Plaintiff's Copyrighted Works, using its trade name and related trademarks, "Dong-A Ilbo" and its Korean, English and Chinese characters, "The Dong-A Daily News," "Miju Dong-A Ilbo" in its English and Chinese characters, and certain logos ("Plaintiff's Trademarks") in South Korea, the U.S. and other foreign countries. Id., ¶ 28, 29.  Plaintiff is also the owner of a domain name or web site address, commonly known as www.donga.com ("Plaintiff's Domain Name"), which contains a portion of Plaintiff's corporate name and Plaintiff's Trademarks in its web site address, specifically the term "donga." Id., ¶ 37, 38.  Plaintiff extensively uses Plaintiff's Trademarks and Plaintiff's Copyrighted Works throughout Plaintiff's website and other Internet properties identified and located by the use of Plaintiff's Domain Name. Id., ¶ 39.

Upon information and belief and at all relevant times, Defendant B. Lim personally and exclusively owns, operates, and controls Defendant KDT. Id., ¶ 9 - 10.  Defendant KDT conducts business throughout the United States on a regular basis, transacts business in the Commonwealth of Pennsylvania ("Pennsylvania"). Id., ¶ 11.  Upon information and belief and at all relevant times, Defendant B. Lim also owns and operates Dong-A Broadcasting System, Donga Media Group a/k/a Miju Donga Media Group, Dongausa.com, Donga Cultural Center, Donga Distribution, The Chosun Daily, Inc. (established in September of 1998), Asian Printing, Korean Christian Broadcasting a/k/a Philadelphia Christian Broadcasting, TJ Screening Printing,

and Christian Post (collectively, "Lim's Companies"), which operate and conduct business in Pennsylvania. Id., ¶ 19 - 21.

Upon information and belief, The Korean Southeast News, Inc. a/k/a Korea Southeast News a/k/a The Southeast News, Inc. d/b/a Donga Daily News, LLC d/b/a The Chosun Daily News-Atlanta ("Defendant KSN") is a corporation organized and existing pursuant to the laws of the State of Georgia, which is owned by Defendant Kook Jin Lee a/k/a Kuk Jin Lee a/k/a Kook J. Lee a/k/a Kookjin Lee a/k/a Koo J. Lee a/k/a Kok J. Lee a/k/a Kook Lee a/k/a Kook Jun Lee a/k/a Peter Lee ("Defendant K. Lee"), with its principal place of business located in Duluth, Georgia and with a branch office located in Elkins Park, Pennsylvania. Id., ¶¶ 7, 12. Upon information and belief and at all relevant times, Defendant KDT and Defendant KSN have maintained a business relationship in which Defendant KDT and Defendant KSN use each other's headquarters as their branch offices and act as one entity in negotiating contracts with third parties with respect to their businesses. Id., ¶ 16.

**B.    *Contract between Plaintiff and Defendant B. Lim***

On or about September 24, 1994, Plaintiff and Defendant B. Lim entered into a certain agreement ("the Contract") where Plaintiff allowed Defendant B. Lim to publish and sell Plaintiff's Copyrighted Works in the Philadelphia, Pennsylvania area. Id., ¶ 40; see also Ex. A of Declaration of Chull S. Park ("Park Decl."). Pursuant to the Contract, Plaintiff provided Plaintiff's Copyrighted Works to Defendant B. Lim by allowing Defendant B. Lim to download Plaintiff's Copyrighted Works from Plaintiff's computer server by a digital delivery system commonly known as File Transfer Protocol ("the FTP"). See V. Compl., ¶ 41. Plaintiff provided a certain password ("the Password") to Defendant B. Lim so that he would be able to download Plaintiff's Copyrighted Works by the FTP. Id., ¶ 42.

**C.**    ***Defendant B. Lim's Attempt to Modify the Contract***

On or about February 18, 2005, Defendant B. Lim attempted to unilaterally modify the Contract by demanding Plaintiff to agree to certain modifications to the Contract. Id., ¶ 57 - 62; see also Ex. B of Motion to Dismiss. Defendant B. Lim forwarded a proposed agreement that, as acknowledged by Defendant B. Lim, was an identical version of a document used by Defendant K. Lee and Defendant KSN, except for a change to the parties, the deletion of the security deposit requirement, and significant change in the amount of payments for Plaintiff's Copyrighted Works from $2,000.00 per month to $500.00 per month ("the Proposal"). Id. Plaintiff refused to agree to the Proposal. Id. Plaintiff also refused to accept any attempted payments in the amount of $500.00 that Defendant B. Lim sent to Plaintiff from February 2005 to January 10, 2006 since such payments did not comport with the terms of the Contract. Id.

**D.**    ***Defendant B. Lim's Intentional Misconduct.***

On or about March 9, 2005, while Plaintiff, Defendant K. Lee, and Defendant KSN were negotiating the terms and conditions of an agreement among them, Plaintiff discovered that Defendant K. Lee and Defendant KSN had previously published Plaintiff's Copyrighted Works and Plaintiff's Trademarks without Plaintiff's knowledge, permission or authorization. See V. Compl., ¶ 50. When confronted with this information, Defendant K. Lee and Defendant KSN admitted they had previously published Plaintiff's Copyrighted Works in the Atlanta, Georgia area without Plaintiff's knowledge, permission or authorization by using the Password they received from Defendant B. Lim to download Plaintiff's Copyrighted Works by the FTP. Id., ¶¶ 51, 52.

### E.    *Continued Misconduct after Termination of the Contract..*

Even after Plaintiff terminated the Contract in February of 2007, Defendant B. Lim, Defendant KDT, Defendant K. Lee, and Defendant KSN (collectively, "All Defendants") still published and sold Plaintiff's Copyrighted Works, continued to improperly use Plaintiff's Trademarks and Plaintiff's Domain Name, willfully and intentionally disregarding Plaintiff's continued demands that All Defendants cease such infringing activities. Id., ¶¶ 101 – 106, 121 – 125.    However, All Defendants continuously represented to Plaintiff that they wanted to amicably resolve all disputes with Plaintiff and also requested new license agreements with All Defendants.    Id., ¶¶ 107 – 108, 111 – 112.    Indeed, Defendant B. Lim and Defendant KDT threatened Plaintiff by stating that if Plaintiff does not allow Defendant B. Lim to publish Plaintiff's Copyrighted Works, it would be a great loss to the citizens and residents of Pennsylvania. Id., ¶ 109.

After filing the Verified Complaint, Plaintiff discovered that Defendant KDT was acquired by STV Networks, Inc. ("STV"), and through this transaction, Defendant B. Lim may have sold all of his shares or interest in Defendant KDT to STV. See Am. Compl., ¶¶ 134 – 136. Plaintiff also discovered that STV, like Defendant KDT, infringed Plaintiff's Trademarks after its acquisition of Defendant KDT. Id., ¶¶137 -146. Accordingly, Plaintiff filed its Amended Complaint to include STV as a defendant and successor-in-interest to Defendant KDT. See Am. Compl.

## STANDARD OF REVIEW

Generally, in deciding a motion to dismiss, the court should "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 230 - 232 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). Thus, this Court should accept all allegations made in the Verified Complaint and Amended Complaint as true in the light most favorable to Plaintiff.

## LEGAL ARGUMENT

I.  **THE LEGAL ARGUMENT OF DEFENDANT B. LIM AND DEFENDANT KDT TO ENFORCE A FORUM SELECTION CLAUSE IS ERRONEOUSLY BASED UPON THE PROPOSAL, NOT THE CONTRACT, AND FURTHER, DEFENDANT KDT DOES NOT HAVE STANDING TO ENFORCE THE FORUM SELECTION CLAUSE OF THE CONTRACT.**

   *A.  PROPOSAL.*

Defendant B. Lim and Defendant KDT erroneously submitted to the Court the Proposal that was merely an offer, which was not accepted and executed by Plaintiff, to support the Motion to Dismiss. See Ex. B of Motion to Dismiss. By his own admission, Defendant B. Lim merely attempted to "amend" the Contract, which was nothing more than an offer to enter into a new contract by including an additional proposed party, additional proposed distribution area, and different payment terms. Id. "The essential terms to a contract include an offer, acceptance, consideration, and/or mutual agreement." See Great N. Ins. Co. v. ADT Sec. Servs., Inc., 517 F. Supp. 2d 723, 736 (W.D. Pa. 2007) (citation omitted). "A contract is enforceable when the parties reach mutual agreement, exchange consideration, and have set forth the terms of their

bargain with sufficient clarity." Id. (citations omitted). "Mutual assent or agreement has been defined 'simply as an expression of agreement between or among parties' which is usually accomplished by an offer and acceptance." Id. (citation omitted).

Defendant B. Lim clearly stated in his cover letter dated February 15, 2005 to Plaintiff, which was attached to the Proposal, that Defendant B. Lim "wanted to amend" the Contract. See Ex. B of Motion to Dismiss. In his cover letter, Defendant B. Lim specifically requested Plaintiff to "review and approve [the Proposal]." Id. Plaintiff never accepted, executed, or signed the Proposal that the Defendant B. Lim and Defendant KDT submitted with the Motion to Dismiss. Id.; see also V. Compl., ¶ 60. Indeed, Defendant B. Lim forwarded the Proposal that, as acknowledged by Defendant B. Lim, was an identical version of a document used by Defendant K. Lee and Defendant KSN. Id.; see also V. Compl., ¶ 58. Thus, Defendant B. Lim and Defendant KDT submitted a document that is irrelevant for purposes of the Motion to Dismiss.

**B.    CONTRACT.**

The relevant document is the Contract, which was executed by Plaintiff and Defendant B. Lim only. See Ex. A of Park Decl. However, Defendant KDT is not a party to the Contract. Id. Pursuant to the Contract, Plaintiff allowed Defendant B. Lim to publish and sell Plaintiff's Copyrighted Works in the Philadelphia, Pennsylvania area. Id. The only parties that can enforce the Contract are Plaintiff and Defendant B. Lim. Id. Defendant KDT cannot enforce the Contract to which it is not a party and has no privity of contract. See Deynzer v. Columbia Gas of Pa., Inc., 875 A.2d 298, 301 (Pa.Super. 2005) (stating that privity of contract is personal and is confined to the contracting parties).

II.    **BECAUSE THE FORUM SELECTION CLAUSE IN THE CONTRACT IS PERMISSIVE, NOT EXCLUSIVE, THIS COURT IS A PROPER FORUM FOR THIS ACTION.**

The Contract contains the following clause:

> Article 20    Any litigation arising out of this contract shall be subject to the jurisdiction of the court where [Plaintiff] resides.

See Ex. A of Park Decl.[1] Such forum selection clause is permissive and not exclusive, and this Court is the proper forum for the dispute between Plaintiff and Defendant B. Lim. "A forum-selection clause in a contract does not oust a competent court of jurisdiction." Nova Ribbon Prods., Inc. v. Lincoln Ribbon, Inc., No. 89 Civ. 4340, 1992 WL 392614, at *1 (E.D.Pa. Dec. 14, 2002) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); Central Contracting Company v. C.E. Youngdahl & Company, Inc., 209 A.2d 810, 815 (1965); Churchill Corp. v. Third Century, Inc., 578 A.2d 532 (1990)). Forum selection clauses can be "permissive" or "mandatory." See Int'l Bus. Software Solutions, Inc. v. Sail Labs Tech., AG, 440 F. Supp. 2d 357, 363 (D.N.J. 2006) (citing S & D Coffee, Inc. v. GEI Autowrappers, 995 F. Supp. 607, 609 (M.D.N.C. 1997)). "'Permissive forum selection clause,' which is perhaps more appropriately referred to as 'consent to jurisdiction' clause, merely specifies [the] court empowered to hear litigation, in effect waiving any objection to personal jurisdiction in a venue; such a clause is 'permissive' since it allows parties to air any dispute in that court without requiring them to do so." Id. By contrast, a "'[m]andatory forum selection clause' identifies [a] particular state or court as having exclusive jurisdiction over disputes

---

[1] It appears that Defendant B. Lim and Defendant KDT claim that South Korean law applies by erroneously relying on the Proposal; however, the Contract does not contain a choice of law clause. See Ex. A of Park Decl.

arising out of parties' contract and their contractual relationship." Id.

In Nova Ribbon, this Court aptly analyzed a forum selection clause with very similar language to the forum selection clause of the Contract. See Nova Ribbon, 1992 WL 392614, at *1. In Nova Ribbon, one of the named defendants, a Pennsylvania resident, sought to enforce the following forum selection clause contained in a personal guarantee at issue:

> The courts of New York and the United States District Courts for New York shall have jurisdiction over the parties with respect to any dispute or controversy between them arising under or in connection with this agreement.

Id. at *1.

This Court determined that the forum selection clause in Nova Ribbon was a permissive one because the forum selection clause "[did] not provide that only the courts of New York will have exclusive jurisdiction over any dispute between the parties." Id. at *2. This Court further explained that the forum selection clause is permissive "unless the language specifically excludes litigation in other courts other than the chosen forum." Id. This Court emphasized that the terms "shall have jurisdiction" without additional exclusionary language did not preclude litigation in this Court. Id. (citing First Nat'l City Bank v. Nanz, Inc., 437 F.Supp. 184, 187 (S.D.N.Y. 1975) (finding that similar language to the language of the forum selection clause in Nova Ribbon did not preclude litigation in another forum); Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers v. Koski Constr. Co., 474 F.Supp. 370, 372 (W.D.Pa. 1979) (finding that a forum-selection clause that contained no language of exclusivity did not prevent litigation in other appropriate forums)).

In addition, this Court previously examined language in a forum selection clause that was more detailed than the language presented in Nova Ribbon. See The Pep Boys-Manny, Moe & Jack v. Amer. Waste Oil Servs. Corp., No. 96 Civ. 7098, 1997 WL 367048 (E.D.Pa. 1997). In

The Pep Boys, a plaintiff attempted to enforce the following forum selection clause:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Pennsylvania. AWR hereby submits to personal jurisdiction in said state for enforcement of this Agreement and waives any and all personal rights under the laws of said state to object to jurisdiction within said state for the purposes of litigation to enforce this Agreement.

Id. at *7. This Court determined that this forum selection clause was also "merely a permissive forum selection clause and [did] not provide for exclusive jurisdiction in the Pennsylvania courts." Id. (citing Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987) (stating that absent "exclusive jurisdiction" language, a "forum selection clause ... is permissive rather than mandatory"); Polsky v. Hall City Centre Assocs. Ltd. Partnership, No. 88 Civ. 9086, 1989 WL 48109, at *3 (E.D.Pa. May 4, 1989) (stating, "Where parties enter into a contract and merely consent to jurisdiction in a particular forum, [the contract] do[es] not preclude the jurisdiction of other forums....")). Thus, despite the explicit language that a party consents to the personal jurisdiction of a court, this Court has still determined that such language could be merely permissive.

Here, the forum selection clause in the Contract states that "[a]ny litigation arising out of this contract shall be subject to the jurisdiction of the court where [Plaintiff] resides[,]" which is nearly identical to the language used in Nova Ribbon. See Ex. A of Park Decl. Clearly, the forum selection clause in the Contract does not contain any language indicating exclusivity. Id. Further, the terms, "shall be subject to the jurisdiction of the court where [Plaintiff] resides," are almost identical to the forum selection clause language in Nova Ribbon: "[t]he courts of New York and the United States District Courts for New York shall have jurisdiction[.]" See Nova Ribbon, 1992 WL 392614, at *1. Indeed, the forum selection clause in the Contract "merely specifies [the] court empowered to hear litigation." See Int'l Bus., 440 F. Supp. 2d at 363. Like

the forum selection clause in <u>Nova Ribbon</u>, there is no exclusionary language in the forum

selection clause in the Contract that would prevent Plaintiff from bringing suit in this Court,

which obviously has jurisdiction over a Pennsylvania resident and Pennsylvania corporation.

Further, unlike <u>The Pep Boys</u>, the language in the forum selection clause in the Contract does not

even identify a specific forum where a party agrees to consent to submit to the personal

jurisdiction of a court and waive any personal jurisdictional defenses. Like the forum selection

clauses in <u>Nova Ribbon</u> and <u>The Pep Boys</u>, the forum selection clause in the Contract is merely a

permissive one and not an exclusive forum selection clause. Thus, this Court is a proper forum

for this action.

**III.    THE ENFORCEMENT OF THE FORUM SELECTION CLAUSE IN THE
CONTRACT WILL BE UNREASONABLE UNDER THE CIRCUMSTANCES OF
THIS CASE.**

Notwithstanding the permissive nature of the forum selection clause in the Contract, the

enforcement of the forum selection clause in the Contract will be so unreasonable in these

particular circumstances that Plaintiff will be deprived of a final and complete resolution to all of

its claims against all of the defendants. Even though a forum selection clause is generally valid,

the court may refuse to enforce the forum selection clause if the party objecting to its

enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement

would violate a strong public policy of the forum, or (3) that enforcement would in the particular

circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be

unreasonable. See <u>M/S Bremen,</u> 407 U.S. at 15 - 17; <u>see also</u> <u>Nova Ribbon,</u> 1992 WL 392614, at

*1. Also, the law of Pennsylvania is similar to the U.S. Supreme Court's ruling in <u>M/S Bremen</u>.

See <u>Central Contracting Co. v. C.E. Youngdahl & Co.,</u> 209 A.2d 810, 816 (1965) (stating that a

forum selection clause "is unreasonable ... where its enforcement would, under all circumstances

existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action.").

This Court previously determined that while a permissive forum selection clause stated New York as a forum, the court "sitting in Pennsylvania [was] the proper place for the litigation of [the plaintiff's] claim [against the specific Pennsylvania resident defendant]" particularly because "Pennsylvania has the most contacts with the transaction and the parties ... and most of the witnesses and documents [were] in Pennsylvania." See Nova Ribbon, 1992 WL 392614, at *3. This Court explained that "[w]ith [the plaintiff] pursuing its claim ... against the other defendants in this court, it is unreasonable and a waste of this court's and both parties' resources to have identical evidence and witnesses presented in two forums." Id. This Court noted that "[the Pennsylvania resident defendant] is a defendant in virtually every count in the ... complaint, and quite possibly will be going to trial in this court on those claims[;] [t]he other defendants ... will also be in this court." Id. This Court concluded that "[i]t is more than mere inconvenience or additional expense to force the parties to pursue double litigation in a forum with no connection to [the] case." Id. Finally, according to this Court in Nova Ribbon, "[s]ince the forum-selection clause is not an exclusive one, and since the ... courts of New York have no reasonable relation to [the] controversy, [the court found] it unreasonable to enforce the forum-selection ... as to [the Pennsylvania resident defendant]." Id.

Notably, even under Pennsylvania state law, the enforcement of this forum selection clause of the Contract will be unreasonable. See Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 578 F.2d. 953 (3d Cir. 1978). In Copperweld Steel Co., a company with a plant in Ohio signed an agreement with a German company. Id. at 955. The agreement contained a provision that stated that "[a]ny disputes arising out of the terms of the contract shall be brought before the

court of justice having jurisdiction in the area where the supplier has its main offices."
Copperweld Steel Co. v. Demag-Mannesmann-Bohler, 54 F.R.D. 539, 541 (W.D.Pa. 1972). In
Copperweld Steel Co., the court held that the provision was unreasonable because, among other
things, all of the records, personnel, and witnesses were in the United States. See Copperweld
Steel Co., 578 F.2d. 953 at 965; see also Morgan Trailer Mfg. Co. v. Hydraroll, Ltd., 759 A.2d
926, 930 (Pa. Super. 2000) (holding that the enforcement of a forum selection clause that called
for the submission of disputes to the exclusive jurisdiction of English courts is unreasonable
because all employees in the suit reside in Pennsylvania, most witnesses reside in the U.S., and
all documentary evidence is in the U.S.).

Here, like Nova Ribbon and Copperweld, the enforcement of the forum selection clause
of the Contract will be unreasonable. A large majority of the alleged wrongful activities
occurred in Pennsylvania, including but not limited to infringement activities of Defendant B.
Lim and Defendant KDT. Most of the witnesses and documents will come from Pennsylvania,
including those individuals that are employed or formerly employed by Defendant B. Lim and
Defendant KDT. Defendant B. Lim and Defendant KDT are named on every count alleged in
this action, including but not limited to those claims under Pennsylvania state law. Contrary to
the argument of Defendant B. Lim and Defendant KDT, it would be unreasonable to expect a
South Korean court to interpret and rule on issues of Pennsylvania state law pertaining to
Pennsylvania defendants. Clearly, this Court has strong interest in determining allegations
concerning violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law
and various claims under Pennsylvania state law committed by Pennsylvania residents. See V.
Compl. Indeed, even after Plaintff terminated the Contract, All Defendants still published and
sold Plaintiff's Copyrighted Works, continued to improperly use Plaintiff's Trademarks and

Plaintiff's Domain Name, willfully and intentionally disregarding Plaintiff's continued demands that All Defendants cease such infringing activities. Id., ¶¶ 101 – 106, 121 – 125. Further, this Court is the proper forum to decide the issues concerning Plaintiff's claims under U.S. federal trademark and copyright law. See V. Compl. Indeed, Plaintiff's claims concerning infringement of its trademarks and copyrighted works may require the testimony of customers and clients of Defendant B. Lim and Defendant KDT residing in Pennsylvania and the U.S. to examine the likelihood of confusion that such infringing activities caused.

Also, while it is Defendant B. Lim that could seek to enforce the forum selection clause, STV, which acquired Defendant KDT from Defendant B. Lim, seemingly cannot be forced to litigate in South Korea. See Am. Compl. Notably, the courts of South Korea may not have any basis to exercise jurisdiction over STV, a Delaware corporation that has no known contacts with South Korea. Indeed, Defendant KDT itself may not have any connection to South Korea other than being a company owned by Defendant B. Lim, the actual party to the Contract. As this Court emphasized, it would be more than "mere inconvenience and additional expense" to force Plaintiff to pursue similar, if not identical, actions against Defendant B. Lim and Defendant KDT in two separate and distinct forums where the possibility of inconsistent rulings exist. See Nova Ribbon, 1992 WL 392614, at *3.

Importantly, Defendant B. Lim is the only party that can seek to enforce the forum selection clause in the Contract. If the Court were to enforce the forum selection clause in the Contract, Plaintiff's claims against Defendant B. Lim would have to be severed from the same claims against all of the other defendants. Indeed, Plaintiff's allegations concerning the interactions among all of the defendants, now including STV, are so intertwined with Defendant B. Lim that removing him would result in duplicative efforts to resolve all the claims of Plaintiff.

Accordingly, not only is the forum selection clause a permissive one, but the enforcement of this forum selection clause would be unreasonable in light of these circumstances where this Court can most effectively adjudicate all the claims of Plaintiff against all of the Defendants. Indeed, given these circumstances that exist[] at the time of litigation[,]" forcing Plaintiff to sever its claims against Defendant B. Lim from the remaining defendants would "seriously impair [Plaintiff's] ability to pursue [its] cause[s] of action." See Central Contracting Co., 209 A.2d at 816.

Finally, Defendant B. Lim and Defendant KDT misplace their reliance on the U.S. Supreme Court's decision in M/S Bremen. The facts surrounding the forum selection clause in M/S Bremen are distinguishable. In analyzing the nature of the forum selection clause in M/S Bremen, the U.S. Supreme Court stated that "[t]here [was] strong evidence that the forum [selection] clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum [selection] clause figuring prominently in their calculations." See M/S Bremen, 407 U.S. at 14. In M/S Bremen, the parties were concerned with "the uncertainty and possibly great inconvenience to both parties ... if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the [deep sea tug] or [it's owner] might happen to be found." Id. at 13.

Here, the facts surrounding the forum selection clause in the Contract are different than those concerning the need for a forum in M/S Bremen. Unlike the facts in M/S Bremen where "companies of two different nations contemplate[ed] the tow of a extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea[,]" there is no such uncertainty

concerning where the activities would be done in this case, in Philadelphia, Pennsylvania. Id. As the U.S. Supreme Court explained in M/S Bremen, the expensive "self-elevating drilling rig" was to be towed through "the waters of many jurisdictions" and could be "damaged at any point along the route" with "countless ports of refuge." Id.

In the present case, this is simply not the same scenario concerning the performance of the Contract. The nature of the Contract involved the publishing and sale of Plaintiff's Copyrighted Works in Philadelphia, Pennsylvania. The selection of South Korea as the forum to resolve disputes arising out of the Contract was not important or necessary to effectuate the terms of the Contract including but not limited to the monetary terms. Defendant B. Lim's activities under the Contract occurred in Philadelphia, Pennsylvania. See Ex. A of Park Decl. Accordingly, there is no evidence that the forum selection clause in the Contract was a vital or necessary part of the Contract. Again, while the forum selection clause in M/S Bremen was utilized to eliminate uncertainty as to the forum where disputes would be resolved by companies of different nationalities, in this case, there is no uncertainty about the location of the activities that Plaintiff and Defendant B. Lim contemplated when executing the Contract. As clearly indicated in the Contract, both parties stated unequivocally that the activities were to take place in Philadelphia, Pennsylvania. Id. Therefore, the defendants' reliance on M/S Bremen is misplaced, and this Court is the proper forum to resolve all disputes between Plaintiff and all of the defendants.

## CONCLUSION

For the foregoing reasons, Plaintiff, The Dong-A Ilbo, requests this Court to deny the

motion to dismiss of Defendant B. Lim and Defendant KDT with prejudice.

Date:   October 26, 2008

Respectfully submitted,

The Park Law Group, LLC
Attorneys for Plaintiff
The Dong-A Ilbo

By: _____

Chull S. Park (No. 202681)
Hyun Suk Choi (No. 203535)